EARLY v. O'BRIEN.

(Supreme Court, Appellate Division, First Department. May 25, 1900.)

1. BUILDING CONTRACT—DRAWINGS CONTROLLED BY SPECIFICATIONS—WARRANTY.

In a building contract the drawing of the cellar indicated a floor therein six inches thick, but did not indicate the material with which it was to be constructed. The specifications provided that the floor should be watertight, and warranted to be such, and that the specifications and drawings must co-operate. *Held*, that the indication in the drawing of the proposed thickness of the floor was controlled by the provision of the specification, and the contractor was bound to make the cellar water-tight, even if it was necessary to make it thicker than six inches.

2. SAME—SUBCONTRACTOR—SUPERVISION OF ARCHITECT—CONTRACTOR'S WARRANTY.

A building contract provided that a cellar floor should be constructed, and warranted water-tight, and that the architect should decide any dispute respecting the meaning of the plans and specifications. The contractor submitted to the architect the plans of a subcontractor for the cellar floor, and the architect remarked that it was better to make it that way. The subcontractor started the construction under the supervision of the architect, but before the floor was completed water burst through

and destroyed it. *Held,* that the contractor was not thereby relieved from constructing such floor in accordance with his contract.

8. SAME—COMPLETION BY OWNER—CERTIFICATE OF ARCHITECT—WAIVER.

     A building contract provided that, in case the contractor failed or refused to supply sufficient materials or workmen, the owner might do so on notice to the contractor, the expense of which he might deduct from the contract price, and also provided that the contract price should be paid upon a certificate of the architect that the work had been fully completed by the contractor. The contractor failed to perform a part of the work, and the owner completed it after giving such notice. *Held,* that the owner, by completing the work as he did, waived the necessity of a certificate of the architect, and was bound to pay the contract price, less the cost of such completion.

Appeal from trial term, New York county.

Action on a building contract by Daniel J. Early, as receiver of Benjamin Weeks, against James O'Brien, executor of Ellen O'Brien, deceased. From a judgment in favor of plaintiff, defendant appeals. Affirmed on conditions.

Argued before PATTERSON, P. J., and RUMSEY, INGRAHAM, McLAUGHLIN, and HATCH, JJ.

Abram Kling, for appellant.

Brainard Tolles, for respondent.

INGRAHAM, J. This action was commenced by one Benjamin Weeks to recover from Ellen O'Brien the amount unpaid under a contract by which the plaintiff was to erect a building upon certain premises belonging to the defendant. Upon the first trial the complaint was dismissed, upon the ground that there was no allegation or proof that the certificate of the architect required by the contract had been given, and no allegation that such certificate had been demanded and unreasonably refused. This was reversed by the court of appeals, upon the ground that, as it had been proven that the defendant had given notice under the fourth section of the contract and had proceeded thereunder to complete the contract, the provision requiring the architect's signature was rendered inapplicable, and that, when the owner proceeds himself under the contract to complete the work, he needs no architect's signature to apprise him whether the contractor has performed his contract. 141 N. Y. 204, 36 N. E. 185. Subsequently the plaintiff was appointed receiver of Weeks in supplementary proceedings, and was substituted as plaintiff in the action. The original defendant died, and her executor was substituted as defendant; and the complaint seems also to have been amended by alleging that the defendant had given the notice required by the fourth subdivision of the contract, and had taken such work out of the plaintiff's hands, and assumed to complete certain portions thereof, and had excluded plaintiff from further connection therewith. Subsequently the plaintiff demanded a certificate from the architect, which said architect unreasonably and wrongfully refused to give. By the contract, a copy of which was annexed to the complaint, the plaintiff agreed to erect a new building on the property described, agreeable to the drawings and specifications made by Charles Mettam, architect, for the sum of $17,058; and the defend-

ant's testatrix agreed, "in consideration of the covenants and agreements being strictly performed and kept by the said party of the second part [plaintiff] as specified, to well and truly pay or cause to be paid unto the said party of the second part, his heirs, executors, administrators, or assigns, the sum of seventeen thousand and fifty-eight ($17,058.00) dollars," as at the time specified in the agreement. It was further agreed that:

"The specifications and drawings are intended to co-operate, so 'that any work exhibited in the drawings and not mentioned in the specifications, or vice versa, is to be executed the same as if it were mentioned in the specifications and set forth in the drawings, to the true meaning and intention of the said drawings and specifications, without any extra charge whatsoever."

And it was also agreed that:

"Should any dispute arise respecting the true construction or meaning of the drawings or specifications, the same shall be decided by Chas. Mettam, and his decision shall be final and conclusive."

By the specifications it is provided:

"All the brick walls, etc., in the basement to be Portland cement of the best quality, and great care must be taken to render the walls perfectly watertight, in grouting and filling the walls with cement and plastering them on the outside. * * * The whole of the basement floor to be made perfectly water-tight, with concrete or asphaltum, and must be warranted, and the floor to be laid on top in Portland cement, the fronts to be laid up with the quality selected, Philadelphia front bricks, laid in white mortar, and neatly jointed, and cleaned down and oiled at the completion with two coats of linseed oil."

The plaintiff testified that a complete set of the plans for this building was shown to him by the architect, both before and after the making of the contract, and that subsequently the architect delivered to him, from time to time, working drawings which were taken from the plans; and the witness produced a certain drawing of the basement and cellar showing a horizontal section of the basement, and another drawing showing the basement floor, piles, foundations, walls above where they started, with the side walls and sewer, being a vertical section of the basement; and these were introduced in evidence. By this vertical section of the basement there appeared the cellar walls, with the piles and concrete foundation upon which they were to be built, and a cellar floor. The concrete foundation, which was shown on these plans as 2 feet in depth by 2 feet 10 inches in width, rested upon the top of the piles; and across from the bottom of each of these concrete foundations extends a dotted line, which would be 2 feet below the cellar floor. The plaintiff testified that this was the only drawing of this basement, representing the cellar floor, that was given to him by the architect. Counsel for the defendant stated:

"I have stated it, and wish to be understood as again saying, and it may be made a matter of record: We shall confine our defense to the question of the foundation and cellar of this building. He did not furnish us with a water-tight cellar. All that work upon the cellar and the walls and foundations was incomplete. Otherwise, he performed."

The witness then testified that he drove the piles necessary under the direction of the architect; that after the piles were driven they were solid and firm, and were cut off square to the tops, and on the

top of the piles the concrete was placed, and upon that the cellar walls were built; that subsequent to that time the plaintiff had a conversation with the architect about the thickness of the floor; that at that time he brought to the architect a contract which he was about to make with one Lumbye as a subcontractor; that the architect said it was better to do it the way the subcontractor proposed to do it; that the architect was then shown the contract with the subcontractor, and was told by the plaintiff that that was the way he was going to put it in; that the architect said it was better to do it that way. By this subcontract the contractor agreed to make a water-tight cellar floor in the building in the following manner:

"Two inches of concrete, and one layer of asphalt and pitch, and over that four to five inches concrete of Portland cement, sand, and gravel, with a smooth surface."

In this contract there is nothing said about the depth of the layer of asphalt and pitch between the two inches of concrete and the four to five inches of concrete of Portland cement which was to make the cellar floor. But the floor, as laid by the subcontractor, was made up of two inches of concrete on the natural earth; on the top of that concrete, there was a coat of asphalt put on; on the top of that, the balance of the concrete, made of the same materials, of the thickness required. The total thickness of the floor was seven inches. The architect was present, and saw this made and applied, and gave directions in regard to the work as it went along, and they were obeyed. One time the architect instructed that more stone be put into the concrete, and gave no other directions in regard to the concrete while the work of laying the floor was in progress. This cellar floor was laid a few days before the 1st of May, 1882, and after it was put down the water split it right in the center, and came flowing in to a depth of nine inches. After this cellar floor broke, the architect had an interview with the plaintiff at which the architect told the plaintiff that if he (plaintiff) did not take up what had been put in the cellar floor, and make it two feet at his own expense, he would make the plaintiff fight for his money. The plaintiff told the architect that he had done more than his contract called for, and had done it with better materials. The plaintiff refused to comply, and he never did repair this floor, so as to make it water-tight. On the 21st of June, 1882, the architect wrote to the plaintiff as follows:

"I am instructed by the owner to give you notice, in accordance with the fourth article of your contract, that after three days from this date, if you do not go on and complete your contract, the work will be done by other parties, and the expenses shall be deducted from the amount of your contract."

After receiving this letter the plaintiff did nothing further upon the building. The plaintiff further testified that he never got a certificate from the architect; that the architect refused to give it. He further testified that his subcontractor, Lumbye, did not complete the work according to his contract, in that he did the work, but did not keep the water out of the cellar; that he was to make a water-tight cellar for the plaintiff, but never did; that Lumbye, the subcontractor, commenced the work about April 10, 1882, but that he wrongfully, and without defendant's approval or consent, abandoned the said work be-

fore the completion thereof, and before the same was water-tight, and failed to make the same water-tight, and the subcontractor abandoned his work, and refused to make the same water-tight as he agreed to do; that he (plaintiff) never employed any one else after Lumbye left to make the cellar water-tight; that the contract with Lumbye was not completed by reason thereof. The plaintiff further testified that, when he signed the contract in connection with the specifications, he knew that the whole basement floor was to be perfectly water-tight with concrete, and warranted; that the object and purpose of that was to prevent the water from getting into the cellar; that the subcontractor wanted to do it his way, and not the way the work was to be done according to the plans and specifications; that he did it his way, and the result was that the water came in, "and that is what raised the trouble." The witness further testified that the architect did not express his disapproval of the way his subcontractor was constructing this cellar floor; that he never said anything against it, but that, after it had burst, he expressed his disapproval; that plaintiff either gave the specifications under which the work was to be done to the subcontractor, or read it to him, before he entered into the contract, and that he (plaintiff) expected the subcontractor to carry out the contract that the plaintiff had made with the defendant, but that the subcontractor failed to do so. The plaintiff further testified that there was one side of the wall in front where there was a little sweating, where it dripped through on the bottom,—a place about as big as a man's hand where it was damp; that the water oozed through, percolated through, the wall on that one spot, or through that one spot; and the witness built a wall around the cellar to hide that,—three or four courses of brick, to hide this spot, the whole length of the side of the cellar.

There can be no doubt from this testimony that Lumbye never did complete his contract with the plaintiff; that he never finished the work, but that, before the work was finished and the cellar floor was completed, the water had burst through it; and that it was in this condition that the plaintiff left the work, and refused the repeated demands of the architect to complete the cellar floor. It is true a floor was put upon the cellar by a subcontractor of the plaintiff, but before that floor was completed the water had burst through and substantially destroyed it. The plaintiff does not allege that, according to his construction of these plans, this cellar floor, as laid by his contractor, was in accordance with the plans. He says it was a better floor than that called for by the plans. Now, upon none of these plans, or the specifications, is there any indication as to how this floor is to be constructed, except in the specifications, which provide that the whole of the basement floor is to be made perfectly water-tight, with concrete or asphaltum, and must be warranted. A cellar floor is delineated upon the plan, which was to be six inches thick; but the specifications distinctly called for, and this plaintiff promised to provide, a cellar floor which was to be made perfectly water-tight, with concrete or asphaltum, and warranted. That, by the specifications, the plaintiff undertook this obligation, cannot, I think, be disputed. There is nothing that can fairly be said to con-

tain any qualification of his obligation to furnish a cellar composed of concrete and asphaltum which would be water-tight. The plaintiff was a builder, familiar with work of this character. He testified that he knew the nature of the ground in this locality. He nowhere testified that he understood from these plans that he would comply with this contract to furnish a waterproof floor by simply laying six inches of concrete; and I do not think that an inference can be drawn, from the depth of this cellar floor upon this working plan, to override the express obligation imposed upon the builder by the specification that he would provide a water-tight cellar floor. This is emphasized by the provisions of the contract that:

"The specifications and drawings are intended to co-operate, so that any work exhibited in the drawings and not mentioned in the specifications, or vice versa, is to be executed the same as if it were mentioned in the specifications and set forth in the drawings, to the true meaning and intention of the said drawings and specifications, without any extra charge whatsoever."

Here was an express obligation to furnish a waterproof cellar, to be constructed of concrete or asphaltum; and no inference to be drawn from the distance between two lines in a plan could relieve the plaintiff from the obligation to perform this express and explicit provision of the specification, which he understood and upon which the defendant's obligation was predicated.

It is not necessary to determine as to the rights of the parties in case the subcontractor has completed his contract. Plaintiff testified that he did not do, and made no attempt to do, what the subcontractor failed in doing. The plaintiff relies upon the case of Stone Co. v. Mayor, etc., of City of New York, 160 N. Y. 81, 54 N. E. 661; but the question there presented was a very different one from that presented in the case now under consideration. In that case the plans and specifications with great exactness detailed the work that the contractor was to do, and the evidence showed that every requirement of the plans and specifications as to material furnished and work done had been literally complied with; and the question as there presented was, after calling attention to the form of the contract, thus stated by the court:

"If this means that the plaintiff agreed to make the boiler room water-tight by following the plan and specifications, even if it could not be done in that way, it agreed to perform an impossibility, as the jury might have found. If, on the other hand, the meaning is that it agreed to make the boiler room water-tight by following the plan and specifications, provided it could be done in that way, it has performed its contract, as we must assume for the purpose of this appeal."

Here neither the plans nor the specifications provided in detail for the method by which the plaintiff was to build this cellar floor. Nothing prevented the plaintiff from making a perfectly water-tight floor in the cellar. The plan showed a cellar floor, and then by the specifications the plaintiff agreed that he would construct such a cellar floor as would be perfectly water-tight, with concrete or asphaltum, to be laid on top with Portland cement. He had his option to build that in any way he pleased of the material named, so long as he made it a waterproof floor. He undertook to sublet this part of his contract, by which a subcontractor agreed to make the cellar floor which

the plaintiff had agreed to make in the following manner: Two inches of concrete, one layer of asphalt and pitch, and over that four to five inches of concrete of Portland cement, sand, and gravel. But, as before stated, before it was finished, the water burst through and substantially destroyed it. Upon what principle can it be said that the plaintiff complied with his obligation to construct a water-tight cellar floor by making a subcontract to provide such a floor which was never completed,—the water bursting through before it was finished? I think it clear that upon his own testimony the plaintiff never completed his work according to his contract.

After the plaintiff had failed to complete the contract the owner, through the architect, gave to the plaintiff the notice, as provided for by the fourth article of the contract, that, if the plaintiff did not go on and complete his work, the work would be done by other parties, and the expenses deducted from the amount due to the plaintiff. The fourth clause of the contract provides that:

"Should the contractor, at any time during the progress of the said work, refuse or neglect to supply a sufficiency of materials or workmen, the owner shall have the power to provide materials and workmen, after three days' notice in writing being given, to finish the said works, and the expense shall be deducted from the amount of the contract."

The effect of this provision of the contract, and notice given under it, was stated by the court of appeals on the former appeal in this case (141 N. Y. 204, 36 N. E. 185) as rendering the provision for the architect's certificate inapplicable. "The owner does the work left undone by the contractor, and the contract provides how, in that case, the expense shall be adjusted, as between him and the contractor." Thus, where the owner gives such a notice to the contractor, he takes upon himself the obligation to complete the work, and is justified in deducting from the amount due to the contractor the expense that he incurs in performing the contract according to its terms. The owner, by stepping in, giving the notice, and assuming to do the work, becomes bound to pay the contractor the contract price, less the amount that he was compelled to pay for doing the work, as required by the contract, which the contractor has failed to do; and this furnished a just protection to both parties. The contractor must have an opportunity to do the work according to the contract. If he fails, the owner can then step in, assume the obligation to do the work, and charge to the contractor the amount of additional expense incurred. It is not necessary to determine what the rights of the parties are if the owner simply neglects or refuses to exercise this right given to him by the contract, and simply calls upon the contractor to complete his contract. In that case, until the contractor does so complete his contract, it is quite probable that he has no claim upon the owner for any further payments under it; but where the owner actually undertakes the completion of the work, and takes it out of the power of the contractor to perform it, he certainly should not be justified in refusing to pay the contract price, less the amount that he has been compelled to expend to complete the contract. The defendant proved that, after this notice to the plaintiff, he employed another contractor to make a new cellar floor, and that he paid him

for the work the sum of $2,904.58. This bill was approved by the architect, and was paid by the defendant, and after the work was completed the cellar was water-tight, and remained so down to the time of the trial. I think that the defendant was entitled to deduct from the amount due to the plaintiff the necessary expense that he incurred in completing this cellar and making the floor water-tight.

On submitting the case to the jury the learned trial judge charged as follows:

"It is true that in the specifications appeared the following: 'The whole of the basement floor to be made water-tight with concrete or asphaltum, and must be warranted, and the floor to be laid on top in Portland cement.' Now, that on its face is a guaranty on the part of Weeks that he would construct a cellar floor that would be absolutely water-tight. But you must bear in mind that the architect should have known what kind of a floor was needed. He is presumed to have known; and, when he prepared a plan which called for a six-inch floor, it was equivalent to a representation to Mr. Weeks that a six-inch floor, constructed of the best material and best workmanship, was sufficient to make the floor water-tight. That was equivalent to a statement on the part of Mettam to Weeks that, 'If you put down a six-inch floor of the best material and the best workmanship, then I say to you that this is sufficient to make the floor water-tight.' And then the contract or the guaranty on the part of Mr. Weeks was equivalent to this: 'If you undertake with me that a six-inch floor, constructed in that manner, will be sufficient and water-tight, then I will guaranty to put down a water-tight floor six inches thick, with the best material and the best workmanship.' So you will see, in order to ascertain whether Mr. Weeks performed his contract, it is very essential to ascertain the kind of floor the contract called for. On the other hand, if this contract, or the plans which are a part of the contract, called for a foundation of two feet, and then a floor on top of it, then the guaranty on the part of Mr. Weeks was this: that he would put on a floor two feet thick, and a floor that would in that case be water-tight. Now, you are to determine that question from the evidence which has been produced before you, and from the plan which they put in evidence; and it is for you to say whether that contract called for a six-inch cellar floor, or whether it called for one as claimed by the defendant."

To this charge counsel for the defendant excepted. I think this presented a false issue to the jury, as there was no evidence to sustain a finding that there was any warranty by the defendant or his architect that a six-inch floor, constructed in any way, would make the cellar water-tight. I have before discussed the effect of these plans and specifications; and the view that I take of the contract, considering the plans and specifications as a part of the contract, is, as before stated, that the plaintiff undertook to construct a waterproof cellar floor, and was not relieved from this obligation because of anything that appeared upon these plans.

Without discussing the other questions presented in the case, it follows that the judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event, unless the plaintiff consents to deduct from the amount of the verdict the sum of $2,-904.58 and interest, thus reducing the judgment as entered to the sum of $10,422.12, in which case the judgment, as so reduced, must be affirmed, without costs of this appeal. All concur.