WAKEHAM & MILLER v. ROMAN CATHOLIC CHURCH OF ST. PAUL.

(Supreme Court, Appellate Division, First Department.    April 4, 1912.)

1. CONTRACTS (§ 306*)—BUILDING CONTRACTS—COMPLETION OF WORK BY OWNER—EFFECT.

A contract for the construction of a church provided that, on the contractor's failure in the performance of any part of the contract, the owner, upon a certificate by the architect, might terminate the employment of the contractor, and take possession and complete the work under the contract, and that after the work was wholly finished, the excess of the contract price above the expense incurred by the owner in completing the work should be paid to the contractor. The owner, without rescinding the contract, terminated the contractor's employment by notice that it would take possession and complete the work, but, after taking possession, used the building as it was, and expended nothing for its completion. Held that, as the owner incurred no expense after taking possession, he was bound to pay the unpaid balance of the contract price.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1528–1533; Dec. Dig. § 306.*]

2. REFERENCE (§ 47*)—DISPOSITION OF COUNTERCLAIM.

Where a counterclaim is put in issue by a reply, it should be disposed of on reference.

[Ed. Note.—For other cases, see Reference, Cent. Dig. §§ 74, 76, 78; Dec. Dig. § 47.*]

Appeal from Judgment on Report of Referee.

Action by Wakeham & Miller against the Roman Catholic Church of St. Paul. From a judgment entered upon the report of a referee dismissing the complaint, plaintiff appeals. Reversed, and new trial ordered before another referee.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Pressinger & Newcombe (Percival D. Oviatt, of counsel), for appellant.

Peter Eagan (Morris A. Tyng, of counsel), for respondent.

CLARKE, J.  The complaint alleged the execution of an agreement in writing, whereby plaintiff undertook to build a church and rectory for defendant for $197,404.75; that plaintiff substantially performed the work and furnished the materials as the contract, drawings, and specifications provided, "excepting as the same were waived, changed, altered, or modified by mutual consent of the respective parties, and as so changed, altered and modified the plaintiff substantially performed the said contract and on or about the 31st day of October, 1908, became entitled to the final payment of the said contract price, less certain credits to which the defendant became entitled, amounting in the aggregate to the sum of $908.20 leaving the amount earned by the plaintiff under the said contract the sum of $196,496.55." Judgment was asked for the balance unpaid on said contract price of $39,-786.40, and an unpaid balance for extra work of $903.64. In the answer the defendant denied that the plaintiff performed the contract alleged in the complaint, either substantially or otherwise. It admitted that certain extra work had been done. It alleged that defendant had

been put to expense in completing the work, and set up a counterclaim for $50,000.

The substantial controversy upon the facts, as presented by the objections in the notice served upon plaintiff terminating its employment, as tried out before the referee and as argued before us, is the substitution by the plaintiff at various places in the exterior walls of solid for hollow bricks. The specifications provided:

"The inside four inches of all exterior walls from foundations to roof to be built of hard burnt hollow brick properly tied and bonded into walls, and of the same dimensions as the ordinary brick; to have headers every sixth course; headers to be perforated transversely."

On the prior page of the specifications it was provided:

"All walls, piers, etc., shown to be of brick on plans, including brick work in basement and foundations, to be constructed of best quality hard burnt up-river brick (to be approved by the architects) laid close and clean screened and sharp sand cement mortar."

The referee found that it required 132,244 hollow brick to build the interior 4 inches of the exterior walls in the manner required by the contract; that the walls built with hard brick where hollow was called for would have required 61,239 hollow brick. The cost of the hard brick was $6.75 per thousand. The cost of the hollow brick was $9 per thousand. The difference is $138. Because of the failure to perform in this item the referee has declared forfeited the balance of the contract price due, very nearly $40,000, refused a recovery for the extra work which was clearly proved and about which there is no dispute, and refused to pass upon the counterclaim of $50,000, although a request for dismissal as not proven was submitted.

There were some nine instances of improper substitution of hard for hollow brick claimed by respondent, of which three were resolved in favor of the plaintiff, four against it, and two were dropped. The plaintiff claims that, as to the four found against it, the weight of evidence establishes that they were ordered by the architects with the knowledge and acquiescence of Dr. McQuirk, who, it was stipulated, "was the agent and representative of the defendant for the purpose of carrying out the said contract in accordance with its terms and provisions, and also had power as such agent and representative to waive or modify any of the provisions of the said contract to the same extent as the defendant corporation could have done." It urges that the 3 changes found in its favor were not authorized in writing, that there were continual changes ordered during the progress of the work—58 are pointed out in the brief—under like conditions, and that it has made out a case of substantial performance of the contract as written, save as modified by mutual consent.

[1] In view of the conclusions we have reached, it is unnecessary to discuss the evidence upon those points.

Article 5 of the contract provided that:

"Should the contractor at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements herein contained, such refusal, neglect or failure being certified by the architects the owner shall be at lib-

erty, after three days written notice to the contractor, to provide any such labor or materials, and to deduct the cost therefrom from any money then due or thereafter to become due to the contractor under this contract, and if the architects shall certify that such refusal, neglect, or failure is sufficient ground for such action, the owner shall also be at liberty to terminate the employment of the contractor for the said work and enter upon the premises and take possession, for the purpose of completing the work under this contract, of all materials, tools and appliances thereon, and to employ any other person or persons to finish the work, and to provide the materials therefor, for in case of such discontinuance of the employment of the contractor, the contractor shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the owner in finishing the work, such excess shall be paid by the owner to the contractor, but, if such expense shall exceed such unpaid balance, the contractor shall pay the difference to the owner. The expense incurred by the owner as herein provided, either for furnishing materials or for finishing the work, and any damage incurred through such default, shall be audited and certified by the architects, whose certificate shall be conclusive upon the parties."

On November 5, 1908, the defendant notified the plaintiff as follows:

"Messrs. Neville & Bagg, the architects of the new building of the Roman Catholic Church of St. Paul, * * * having certified to the owner of said building, which certificate is hereto annexed, that you have not performed the work on said building in accordance with the terms of the contract, in that you have neglected and failed to build the interior four (4″) inches of all exterior walls from foundations to roof of said building of hard burnt hollow bricks, properly tied and bonded into the walls as provided in the plans and specifications, although you have received written notice of such unsound and defective work as well as written notice from the owner of said building that said work has been condemned and requiring you to remove and properly replace the same, and that notwithstanding such notices you have refused, neglected and failed to comply therewith and with the terms of the contract, and that such refusal, neglect and failure are sufficient grounds for the termination of your employment as contractor on said work by said owner and for said owner to take possession of said premises for the purpose of completing the said work under the terms of the contract, you are hereby notified that your employment as contractor is hereby terminated, and that said owner will enter into possession of said building for the purpose of completing said work under said contract."

What defendant, under the contract was entitled to do, then, there being no rescission of the contract, but a termination of the employment, was to go on and complete, charge the contractor with any excess, and pay him any profit. It did nothing. It took the building precisely as it was, so kept it and so used it ever since. Thus it succeeded in getting its church and rectory built for about $40,000 less than the contract price.

The referee has found:

"Immediately after the last said mentioned notice, the defendant took possession of the premises and of the said church and rectory, and excluded the plaintiff therefrom. After taking possession, the defendant did not at any time substitute hollow brick for hard brick in any of the places in which it claims that hollow brick was wrongfully omitted by the plaintiff."

The defendant having elected to give notice of the termination of the employment, and having taken "possession for the purpose of completing said work under said contract," could not thereby forfeit what had been earned under the contract, but was required to proceed to complete. If the unpaid balance should exceed the expense incurred

by the owner in finishing the work, such excess was required to be paid by the owner to the contractor. As matter of fact, the owner incurred no expense in finishing the work. It accepted and ever since has used the building as received by it at that time. Hence, under the terms of the contract upon which the owner acted, it is bound to pay the balance unpaid, as that balance exceeds in its entirety the expense incurred, as there was none. As the owner took possession to finish, it was required to do so within a reasonable time. This provision of the contract is clear. Defendant could not act under it to destroy plaintiff's rights under the plea of taking possession to finish properly, and then do nothing, in order to work an entire forfeiture. In Fraenkel v. Friedman 199 N. Y. 351, 92 N. E. 666, the Court of Appeals had under consideration an identical provision of a building contract. Chase, J., said:

"The right therein given to terminate the employment of the plaintiff is permissive to the owner. It is for the benefit of the owner, and not for the benefit of the contractor."

There the owner exercised the option by sending the notice contemplated by the provision alluded to. The court said:

"The letter does not appear to be a cancellation of the contract or an assertion by the defendant that he intends to stand upon his legal rights. * * * "

It does not in terms purport to terminate and cancel the contract, but does in terms state:

"I shall enter upon said premises and take possession for the purpose of completing the work included in the contract myself. * * * Where an owner completes the contract at the contractor's expense pursuant to a provision of the contract, the right thereafter to claim that the contractor had forfeited the benefits of the contract are thereby waived, and all the owner can claim is the proper reduction from the contract price. Ringle v. Wallis Iron Works, 149 N. Y. 439, 445 [44 N. E. 175]. It has also been held that, where a notice has been given to the contractor that the owner himself would resume charge of the work and complete the contract, the requirement in the contract that the certificate of the architect is a condition precedent to a recovery has no application. Smith v. Wetmore, 167 N. Y. 234 [60 N. E. 419]; Early v. O'Brien, 51 App. Div. 569 [64 N. Y. Supp. 848]; Weeks v. O'Brien, 141 N. Y. 199, 204 [36 N. E. 185]. * * * Where a defendant, an owner, elects to terminate an employment pursuant to a provision of the contract, and proceeds personally with the completion thereof, he must pay the contractor the amount of the contract price less the amount necessary for the completion thereof as provided by the provisions of the contract authorizing the termination of the employment. If he is to stand upon his legal rights apart from the permissive authority given to him under the contract to take possession and complete the contract, he should clearly assert such legal rights and terminate the contract itself. Ogden v. Alexander, 140 N. Y. 356 [35 N. E. 638]."

Under the foregoing authority applying directly to the case at bar, the judgment must be reversed. It must also be reversed because the plaintiff was clearly entitled to a recovery of the amount unpaid on the extra work performed which depended upon independent contracts therefor. The amount unpaid was found by the referee, and is undisputed, but he refused to find that it was due and owing.

[2] The referee ought also to have disposed of the counterclaim put in issue by the reply.

It follows that the judgment appealed from should be reversed, and a new trial ordered before another referee to be appointed, with costs to the appellant to abide the event. All concur.